**John C. COOK, et al. (listed in Appendices A and B), Plaintiffs-Appellants,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC.; Air Line Pilots Association, International; Air Line Pilots Association, Pan Am Chapter; Flight Engineers International Association; Flight Engineers International Association, Pan Am Chapter, Respondents-Appellees.**

**No. 875, Docket 84–7972.**

United States Court of Appeals, Second Circuit.

Argued March 5, 1985.

Decided Aug. 22, 1985.

Jeffrey C. Londa, Houston, Tex. (Butler & Binion, Houston, Tex., Robert E. Cohn, Kevin F. Flynn, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Jeffrey Bernbach, New York City, of counsel), for appellants.

Richard Schoolman, New York City (Patricia J. Langer, Pan Am Legal Dept., New York City, of counsel), for appellee Pan American World Airways, Inc.

Robert A. McCullough, Washington, D.C. (Gary Green, Air Line Pilots Ass'n, Int'l, Washington, D.C., of counsel), for appellee Air Line Pilots Ass'n, Int'l.

Asher W. Schwartz, New York City (O'Donnell & Schwartz, New York City, of counsel), for appellees Flight Engineers' Intern. Ass'n, Pan Am Chapter and Flight Engineers' Intern. Ass'n, AFL–CIO.

Before MANSFIELD, NEWMAN and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

John C. Cook and more than 400 other current or former Pan American Pilot-Flight Engineers, all over age 40, appeal from a judgment of the Southern District of New York, Robert J. Ward, *Judge*, dismissing their complaint against Pan American World Airways, Inc. ("Pan Am") and four union defendants—Air Line Pilots Association ("ALPA"), International; ALPA, Pan Am Chapter; Flight Engineers' International Association ("FEIA"); FEIA, Pan Am Chapter—for lack of subject matter jurisdiction. Their complaint alleged that, by adopting and implementing a 1981 seniority list integrating the pilots and flight engineers of two merged airlines, Pan Am and National, the defendants had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623–31 (1982), and New York Human Rights Law ("NYHRL"), N.Y.Exec.Law §§ 290, *et al.* (McKinney 1982 & Supp.1984–85), and that defendant unions had in addition violated the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1982). Finding that plaintiffs' action constituted an impermissible collateral attack on a final order of the Civil Aeronautics Board ("CAB"), not appealed in accordance with the provisions of § 1006 of the Federal Aviation Act, 49 U.S.C. § 1486(a), Judge Ward dismissed their complaint for lack of subject matter jurisdiction. We affirm in part, reverse in part, and remand for further proceedings.

This case arises out of Pan Am's acquisition of control of and merger with National Airlines, effective January 19, 1980. The merger was approved by the CAB pursuant to 49 U.S.C. § 1378(b), which empowers it to determine whether mergers are "consistent with the public interest" and to approve them "upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe". The CAB conditioned its approval of the merger upon compliance with its labor protection provisions ("LPPs"), *see Flying Tiger-Slick Merger Case*, 18 C.A.B. 326 (1954) (approving airline merger but imposing labor protective conditions and retaining jurisdiction), and retained jurisdiction "to make such amendments, modifications, and additions to the labor protective conditions as the circumstances may

require...." CAB Order 79–12–164, at 1. Two of the LPPs are central to this case:

"Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13.

\* \* \* \* \* \*

"Section 13(a). In the event that any dispute or controversy \* \* \* arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator \* \* \*. The decision of the arbitrator shall be final and binding on the parties."

On March 19, 1980, the four unions involved—the ALPA Master Executive Council ("MEC") for the Pan Am pilots, ALPA's MEC for the National Pilots, FEIA's Pan Am Chapter, and FEIA's National Chapter—agreed on a procedure for determining how to integrate the seniority lists. In the event that agreement on seniority integration should not be reached within a limited period arbitration was to be "mandatory," and "[t]he Award of the Arbitrator shall be final and binding as to all flight deck operating crew members and shall be defended by the parties." March 19, 1980, Agreement ¶ 8(j).

After unsuccessful inter-union negotiation and mediation on seniority integration, arbitration took place before Lewis M. Gill, whom the parties had designated as their first choice. The four union representatives participated fully in the arbitration hearing, which lasted approximately 35 days and closed on January 14, 1981. Arbitrator Gill subsequently held 15 days of executive session with the union parties. The final record contained over 4,700 transcript pages and hundreds of exhibits. Arbitrator Gill issued his Award on March 12, 1981.

In his lengthy opinion explaining the award Gill identified several issues. First, the "cross-bidding" arrangements between pilots and flight engineers at Pan Am were entirely different from those at National. Although both airlines required three crewmen in the cockpit, Pan Am used a pilot/flight engineer ("PFE") as the third crewman, while National used an engineer who was not qualified as a pilot. Pan Am accordingly maintained a single seniority list, with PFEs being allowed to bid for pilot vacancies and fall back to engineer positions, bumping less senior PFEs to avoid furlough. National, however, maintained two independent seniority lists, one for its pilots and one for its flight engineers, and did not permit cross-bidding or displacement between the groups.

Having decided not to disturb the premerger cross-bidding situation, Gill constructed two integrated lists. One, the "Pilot List," contained National pilots and all Pan Am airmen; the other, the "Engineer List," contained National engineers and all Pan Am airmen. Gill then directed that cross-bidding be

"[a]s before on each airline. Pan Am airmen continue cross-bidding practices vis-a-vis each other, but Pan Am Pilots cannot bump National Engineers. National Pilots cannot bid Engineer positions, National Engineers cannot bid Pilot positions. National Engineers to have same rights as [a small class of Pan Am engineers who did not qualify as pilots] against being displaced from Engineer seats by Pilots." (Award at IV.C.)

A second issue, labelled "explosive" by Gill, concerned the manner in which approximately 400 Pan Am pilots on furlough at the time of the merger were to be integrated. This large number of furloughees resulted from Pan Am's switch from smaller planes to B747s, the largest wide-bodied aircraft, and Pan Am's poor financial health in the preceding few years. Gill stated that this furlough situation created

"a head-on clash over the relative equities as between large numbers of National airmen hired between 1968 and 1978 and actively employed at the time of the merger, and large numbers of these Pan Am furloughees with earlier dates of hire who still have recall rights but who brought no active jobs to the merger." (Gill Op. at 8).

Gill's solution was to calculate the Pan Am furloughees' length of service at the time of their recall, and to slot them into the list by comparing their length of service with that of the active airmen at that time. (An exception was made for about 34 furloughed Pan Am pilots who had received notice of recall before January 19, 1980). He indicated a willingness, had the parties (or the "JANUS" group, representing the furloughees) submitted a proposal estimating the likely dates of recall of the furloughees and the likely length of service of the active pilots at those dates, to integrate the furloughees on that basis. However, no such proposal was forthcoming "[p]erhaps because of the difficulties in fashioning projections of that nature." *Id.* at 41. While noting that his solution to the furloughee problem might seem novel, Gill observed that

"the problem itself is novel—there has not been any previous merger case called to my attention where such massive numbers of furloughees, with such long periods of being off the property, were pitted against active airmen from the other airline who brought current jobs to the merger." *Id.* at 40.

Finally, differences between Pan Am and National created further conflicts between the interests of the various union groups. While Pan Am's fleet consisted primarily of B747s, National mostly used the smaller B727s. Although National was in "a healthy financial condition at the time of the merger," Pan Am had been in financial difficulties over the preceding few years. Because of these and other differences, the parties before Gill advocated three different methods for integrating the seniority lists: (1) the National pilots and engineers advocated "ratio" methods; (2) the Pan Am pilots a mixed length of service ("LOS") and date of hire ("DOH") method; and (3) the Pan Am engineers a straight DOH method. Under a ratio method, a certain number of identified airmen from one airline are listed followed by a similar listing of a specified number of airmen from the other airline (e.g., 1 National pilot followed by 3 Pan Am pilots). The ratios can form all or part of a master list. In the latter case the balance of the list can name airmen on an LOS and/or DOH basis.

Gill concluded that a "fair and equitable" solution required that two integrated seniority lists be constructed by different methods. He constructed the entire Engineer List, and the top and bottom of the Pilot list, by a straight LOS/DOH method. However, for the middle portion of the Pilot List he used a mixed-ratio method, which distributed Pan Am and National pilots in a ratio of approximately 3.25 Pan Am pilots for every one National pilot.

On March 15, 1981, ALPA mailed copies of the arbitrator's award to all the pilots and on March 25, 1981, FEIA mailed copies to the flight-engineers. On June 26, 1981 Pan American accepted the Gill award and agreed to implement it without change.

Two groups of airmen petitioned the CAB to set aside the Gill award. The Janus Group, formed at the time of approval proceedings before the CAB and representing 510 Pan Am crewmen who had been furloughed before the merger, maintained that the Gill award failed adequately to consider the interests of its members and that it was not "fair and equitable" within the meaning of the labor protection provision of CAB Order 79–12–164, at 1. The Janus Group sought a new arbitration in which it would be granted full party status.

Pan American Pilots Fighting ("PAPF"), a group of Pan American crewmen who had been employed from dates before the merger, which was formed after the arbitration award to oppose it, argued that the Gill award must be set aside because it used a ratio method to integrate the middle

portion of the Pilot List. PAPF maintained that only a "time served" method of integration, either LOS or DOH, was "fair and equitable" and that use of a ratio method was inconsistent with the labor protective provisions that the CAB had imposed in approving the merger. PAPF sought a CAB order integrating the seniority list on a time served basis or renegotiation of the integration with PAPF and the Janus Group as parties.

The CAB rejected the two petitions in an order dated April 15, 1982, noting:

> "The carrier's action is wholly consistent with our long-held, and judicially approved, view that 'absent a showing of bad faith, the adoption by a carrier of an integrated seniority list proposed by the collective bargaining representatives of the employees involved amounts to the carrier having made "provisions * * * for the integration of seniority lists in a fair and equitable manner" within the meaning of section 3 of the Board's labor protective provisions.'[13] It follows, therefore, that we also dismiss Janus Group's and PAPF's petitions to set aside the award.

[13] *Delta-Northeast Merger Case,* Order 73-1-24 at 5, *aff'd Northeast Master Executive Council v. CAB,* 506 F.2d 97 (D.C.Cir.1974), *cert. denied,* 419 U.S. 1110 [95 S.Ct. 783, 42 L.Ed.2d 806 (1975)]."

CAB Order 82-4-75 at 11.[1] Having concluded that resolution of the seniority integration was reached in a fair and equitable manner, the Board declined to review "the intrinsic nature of the integration system established by the award." *Id.*

The CAB further found that the Janus Group was not entitled to full party status at a new arbitration since its members' interests were adequately represented both by its own statements at several points during the arbitration and by union representation at all stages. It also rejected PAPF's claim that only a "time-served," i.e., LOS or DOH, method of integration was "fair and equitable", finding that Arbitrator Gill acted within his prerogative in using a ratio method to integrate the middle portion of the Pilot List. In making this finding, the Board again confirmed the propriety of its refusing " 'to look behind the freely negotiated list.' " *Id.* at 12 (quoting *Northeast Master Executive Council v. C.A.B.,* 506 F.2d 97, 105 (D.C. Cir.1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975)). No appeal was taken from the CAB's denial of the two petitions, even though an appeal was available under 49 U.S.C. § 1486, which provides in relevant part that "any" order of the Board "shall be subject to review by the courts of appeals of the United States" which "shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board...." 49 U.S.C. §§ 1486(a), (d). The statute further provides that the Board's findings, if supported by substantial evidence, shall be conclusive, 49 U.S.C. § 1486(e).[2]

---

1. The CAB also dismissed a "Motion for Confirmation and Enforcement of [the] Arbitration Award," filed by flight engineers formerly employed by National, as moot.

2. We have held that for purposes of review under 49 U.S.C. § 1486(a) the word "order" should be construed liberally. *State of New York v. F.A.A.,* 712 F.2d 806, 808 (2d Cir.1983). Although only final orders are reviewable, *McManus v. C.A.B.,* 286 F.2d 414, 417 (2d Cir.), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961), we have defined a final order as one which "imposes an obligation, denies a right, or fixes some legal relationship." *Rombough v. F.A.A.,* 594 F.2d 893, 895–96 n. 4 (2d Cir.1979) (citing *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 112–13, 68 S.Ct. 431, 436–37, 92 L.Ed.

568 (1948)). The order in the instant case meets this criterion.

Our conclusion that the CAB order denying the petitions to set aside (rather than the original CAB order approving the merger but retaining jurisdiction to ensure that the LPPs are complied with) is appealable, *see, e.g., Northeast Master Executive Council v. C.A.B., supra,* 506 F.2d at 100, and consistent with cases in which we have held orders approving a merger to be non-reviewable, *Overseas National Airways, Inc. v. C.A.B.,* 426 F.2d 725, 727 (2d Cir.1970) (CAB orders refusing to expand scope of hearing nonreviewable as merely "threshold determinations," "interlocutory in nature"); *McManus v. C.A.B., supra,* (CAB orders "relating to various procedural details" not subject to review).

The complaint in the present action, which was filed on March 7, 1984, alleged that plaintiffs were all over age 40 and that many had, in the period April 12, 1983 to September 2, 1983, filed in various federal and state equal employment offices charges containing some or all of the allegations stated in the complaint. The complaint charged that the pilot seniority list resulting from the Gill arbitration award, which used a ratio formula "to insert large numbers of former National pilots under age 40 ahead of older and more experienced Pan Am pilots over the age of 40," ¶ 11, was first implemented on a system-wide basis on March 28, 1983, and that it had been and would continue indefinitely to be implemented. Further, the complaint maintained that on June 15, 1983, Pan Am had caused to be furloughed, under the Gill seniority integration, three of the plaintiffs.

The complaint further alleged that "[b]y using and adopting, and by indefinitely continuing to use and adopt, the above-described seniority system in making employment decisions" defendant Pan Am has engaged in "willful and continuous violation" of both § 4(a) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and § 296 of the New York Human Rights Law, N.Y.Exec.Law § 296; and that the four defendant unions, "[b]y actively supporting and/or acquiescing in, and by indefinitely continuing to actively support and/or acquiesce in, the above-described seniority system," had engaged in "willful and continuous violation" of § 4(c) of the ADEA, 29 U.S.C. § 623(c), and § 296 of the New York Human Rights Law, and that they had thereby breached their duty under the Railway Labor Act, 45 U.S.C. §§ 151, et seq., to fairly represent the interests of the plaintiffs. Plaintiffs sought injunctive relief, including an order directing defendants to construct and implement a seniority system which eradicated the effects of the allegedly unlawful employment practices described; damages to make them whole; liquidated damages; and attorneys' fees and costs.

Pan Am sought dismissal of the complaint on the grounds that the ADEA cause of action was time-barred and that the pendent claim should be dismissed for lack of jurisdiction. ALPA and FEIA also moved for dismissal on the grounds that plaintiffs' ADEA and duty of fair representation claims were time-barred and that the complaint constituted an impermissible collateral attack on a final order of the CAB.

At the end of a hearing held on October 31, 1984, Judge Ward issued an oral opinion and an order dismissing plaintiffs' complaint on the ground that it constituted an impermissible collateral attack on a final order of the CAB that had not been appealed in accordance with the provisions of § 1006 of the Federal Aviation Act, 49 U.S.C. § 1486(a). This appeal followed.

## DISCUSSION

The principal issue is whether the integrated seniority list formulated by the parties' mutually-selected arbitrator pursuant to the CAB's labor protection provisions may, notwithstanding the CAB decision, be challenged through the present lawsuit on the ground that it violates plaintiffs' rights under the ADEA and the New York Human Rights Law. The starting point for consideration of that issue lies in Supreme Court decisions upholding *de novo* judicial determination of claims asserted under similar federal statutes, *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (civil rights claim under 42 U.S.C. § 1983); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Minimum wage provisions of Fair Labor Standards Act); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII action). *Gardner-Denver* has particular relevance for the reason that the prohibitions of the ADEA, enacted only a few years after Title VII, are in terms almost identical to those of Title VII, *Hodgson v. First Fed. Sav. & Loan Ass'n*, 455 F.2d 818, 820 (5th Cir. 1972), and both laws have received parallel interpretations. *Aronsen v. Crown Zeller-*

*bach,* 662 F.2d 584, 589 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). *See also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756–58, 99 S.Ct. 2066, 2071–73, 60 L.Ed.2d 609 (1979).

In *Gardner-Denver, supra,* the Supreme Court unanimously held that, since Congress intended to give federal courts parallel jurisdiction over a *de novo* proceeding, an employee's statutory right under Title VII to obtain judicial relief from discrimination in his employment is absolute and not barred or waived by his resort to the grievance-arbitration machinery of a collective-bargaining agreement. Congress, said the Court, intended

> "to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id.,* 415 U.S., at 48–49, 94 S.Ct. at 1019–1020.

The Court noted, as reasons for its decision, that the arbitrator's role was "to effectuate the intent of the parties rather than the requirements of enacted legislation," *id.* at 56–57, 94 S.Ct. at 1023–1024, that the arbitrator's competence "pertains primarily to the law of the shop, not the law of the land," *id.* at 57, 94 S.Ct. at 1024, that the record of arbitration is usually not as complete as that of a court proceeding, that the rights and procedures common to civil trials are often limited or unavailable and that arbitrators have no obligation to give their reasons for an award. These reasons were echoed and adopted in *McDonald* in support of the Court's holding that a federal court may not, in a civil rights action under 42 U.S.C. § 1983, give preclusive effect to an arbitration award, concluding that arbitration is not the equivalent of a "judicial proceeding" within the

meaning of 28 U.S.C. § 1738. 104 S.Ct. at 1804.

Some of the Supreme Court's reasoning may not be as fully applicable to the arbitration proceeding in the present case as it was in *Gardner-Denver* and *McDonald.* For instance, the fairness of integrated seniority may have been resolved by the arbitrator consistently with the aims of ADEA. But we are persuaded that this difference in shading is not of sufficient significance to outweigh the statutory entitlement to the *de novo* determination provided for by Congress in its enactment of ADEA.

There remains, therefore, the question of whether, since Arbitrator Gill's order was appealed as of right to the CAB by way of a motion to set it aside and the CAB's resulting order was in turn appealable to a court of appeals, vested by statute with "exclusive jurisdiction" to hear such appeals, the principles of *Gardner-Denver* and *McDonald* still apply or whether the order of the CAB must be given collateral estoppel or preclusive effect. The answer turns largely on whether the issue before the administrative agency, in this case the CAB, was the same as that raised in the later court proceedings and whether the administrative agency had the authority to decide that issue. In *City of Tacoma v. Taxpayers,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958), relied on by the district court, collateral attack was barred when the issue raised by the State of Washington in a proceeding before the state court, the legality and effect of a license issued by the Federal Power Commission, was the same as that raised by it earlier before the Commission itself, which was fully competent to resolve the issue, and was decided upon appeal by the Court of Appeals, which had "exclusive jurisdiction" to review the Commission's order. In *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922), also cited by the district court, collateral attack upon an order of the Interstate Commerce Commission was barred since the issue raised in the later court proceeding was one which the ICC was explicitly empowered to decide.

On the other hand, when the administrative agency is neither authorized nor required to decide the issue later raised in a separate action, the court has jurisdiction to entertain the latter claim. In *Beins v. United States*, 695 F.2d 591 (D.C.Cir.1982), for instance, the court upheld the district court's jurisdiction to entertain a pilot's claim under the Federal Tort Claims Act against the government for damages based on alleged negligence of the Federal Aviation Commission. The government's contention that the plaintiff's sole remedy was an appeal to a court of appeals of the FAA's denial of medical certification was rejected on the ground that the determinations made by a court of appeals "are distinct conceptually from a finding of negligence." *Id.* at 598.

Applying these principles here, the record does not reveal any CAB ruling on the question now raised by the plaintiffs of whether the integrated seniority lists formulated by Arbitrator Gill were unfair as age-discriminatory. The CAB made no independent inquiry into possible age discrimination and held no evidentiary hearing. Indeed, none of the parties presented an issue based on age discrimination to the Board. In opposition to a motion by National Flight Engineers to confirm the award and in support of motions to set it aside, the Janus Group and PAPF argued only that their interests had not been adequately considered by the arbitrator, and that the ratio method used for part of the arbitrator's integrated seniority lists, in contrast to "time served" methods (DOH and LOS), was not a fair and equitable basis for integration.

Nor did the CAB indicate that it would have considered itself authorized to rule upon such an issue (unfairness based on age discrimination) if it had been raised. On the contrary, although it reviewed in detail Arbitrator Gill's 59-page decision, it repeatedly made clear that it considered its authority limited to deciding whether the arbitration had been conducted "in a fair and equitable *manner*" (LPP § 3; emphasis added), i.e., as a procedural matter, rather than whether the terms of the award were substantively equitable. In short, it focused its attention on the procedures used by the parties to negotiate the seniority integration issue, to arrive at terms for arbitration of the issue when the negotiation failed, and to assure fair representation of union members in the arbitration itself.

> "Our authority, however, over arbitration voluntarily undertaken by employee representatives in connection with a Board-approved acquisition or merger is confined to examining whether the arbitration was fairly and equitably conducted." CAB Order 82–4–75, at 3.

The Board's limited review of the merger (of seniority lists) claimed to have violated § 3 of the LPPs is consistent with the limited jurisdiction over labor matters conferred upon it by 49 U.S.C. § 1378(b) and with the Board's own interpretation of the scope of that jurisdiction, which is entitled to considerable weight. *See, e.g., Youakim v. Miller*, 425 U.S. 231, 235, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976) ("The interpretation of a statute by an agency charged with its enforcement is a substantial factor to be considered in construing the statute."); *Manchester Environmental Coalition v. E.P.A.*, 612 F.2d 56, 59 (2d Cir.1979). As the Board has noted, despite its imposition of the LPPs,

> "it has been the Board's longstanding policy that the matters encompassed herein should be resolved by voluntary agreement between the carrier and the labor groups or employees involved or, failing agreement, by arbitration. This policy with respect to seniority integration is reflected in sections 3 and 13 of the labor protective conditions." *American-Trans Caribbean Merger*, 57 C.A.B. 581, 585 (1971), *aff'd sub nom. American Airlines v. C.A.B.*, 445 F.2d 891 (2d Cir.1971), *cert. denied*, 404 U.S. 1015, 92 S.Ct. 681, 30 L.Ed.2d 663 (1972). (Footnotes omitted).

The purpose and scope of the LPPs is extremely limited:

"[W]e have characterized LPP's as 'an extraordinary intervention ... into the employer-employee relationship.' ... [W]e have repeatedly refused to become entangled in carrier-employee labor disputes, because our jurisdiction is limited, we lack expertise in labor relations, and there are better equipped, more competent forums available to handle labor disputes. Moreover, it is important to recognize that the primary intent of the Board's LPP's historically has been to prevent disruptions in the national air transportation system. Their purpose has not been to benefit carrier employees directly, or to avoid labor unrest with particular air carriers." *Texas International-Continental Acquisition Case,* CAB Order 81–10–66, at 11 (footnotes omitted).

In implementation of its limited authority the Board will scrutinize a freely-negotiated integrated seniority list "only on a showing of bad faith, or deliberate attempt to subvert the Board's order, or other compelling circumstances," *Delta-C & S Seniority List,* 29 C.A.B. 1347, 1349 (1959), *aff'd sub nom. Outland v. C.A.B.,* 284 F.2d 224 (D.C.Cir.1960). The Board will not find § 3 of the LPP's satisfied unless it determines that the groups of employees affected have been adequately represented in formulating the list.

With these exceptions, which go to the "manner" in which the arbitration was conducted, the CAB leaves the resolution of all other issues to the parties or their mutually-selected arbitrator. Indeed, the CAB has acknowledged that a finding by it that seniority lists have been integrated "in a fair and equitable manner" does not necessarily bar petitioners from challenging the legality of the lists themselves in court. In *Delta-C & S Seniority List, supra,* 29 C.A.B. at 1350, it stated (after rejecting petitioners' claim that the merged list was not fair and equitable), "[w]e take no position on whether petitioners have a cause of action cognizable by the courts." *See also Pan Am-TWA Route Exchange Agreement,* CAB Order No. 80–6–95, at 4 ("We will not ... review the merits of a challenged [seniority integration list] award, the merits including questions of law and questions of fact."). In a case in which petitioner charged that he had been subjected to age discrimination and sought damages, the CAB explicitly stated that "[a]ge discrimination is outside the scope of the LPP's." *Caribbean-Atlantic Airlines, Inc.-Eastern Air Lines, Inc., Acquisition Case,* CAB Order 80–10–65, at 2.

Thus, because of the ADEA's statutory grant of *de novo* review and the CAB's lack of authority to adjudicate the age-discrimination issue later raised in the present action, this action is not barred by reason of the collateral attack doctrine. Our conclusion that the district court has jurisdiction to consider the ADEA claims is not inconsistent with the principal authorities relied on by Judge Ward. For reasons already noted, *City of Tacoma, supra,* and *Lambert Run Coal Co., supra,* are clearly distinguishable. No ADEA, Title VII or similar claims were asserted in *Kesinger v. Universal Airlines, Inc.,* 474 F.2d 1127 (6th Cir.1973), and *Oling v. Air Line Pilots Ass'n,* 346 F.2d 270 (7th Cir.), *cert. denied,* 382 U.S. 926, 86 S.Ct. 313, 15 L.Ed.2d 339 (1965). Those two decisions did not rule upon the substantive fairness of integrated seniority lists but on whether the unions had breached their duty of fair representation before the CAB, an issue over which the CAB has jurisdiction because it bears directly on whether the lists were arrived at in a fair and equitable "manner" as provided for by LPP § 3. But even if the CAB's authority were enlarged to permit it to rule on the substantive fairness of the integrated seniority lists, we believe, for the reasons already stated, that plaintiffs would not be precluded from obtaining a *de novo* federal court review of that issue. *Gardner-Denver, supra; McDonald, supra.*

We find ourselves unable, for the reasons already indicated, to follow the District of Columbia Circuit's decision in *Carey v. O'Donnell,* 506 F.2d 107 (D.C.Cir. 1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975), upon which Judge Ward relied. The court there held

that the district court lacked jurisdiction over plaintiffs' claim that the defendants had violated the ADEA, in view of the court's approval on the same day, in *Northeast Master Executive Council v. C.A.B.*, 506 F.2d 97, *cert. denied*, 419 U.S. 1110, 95 S.Ct. 783, 42 L.Ed.2d 806 (1975), of the Board's dismissal of petitions alleging that the underlying integration of seniority lists had not been arrived at in a "fair and equitable manner." The D.C. Circuit purported to rely on the rationales expressed in *Kesinger, supra,* and *Oling, supra,* which are clearly distinguishable for the reasons we have noted above. Moreover, it did not analyze the claims before the district court, the limited authority of the CAB, and the right to a *de novo* trial of ADEA claims, but merely stated in conclusory fashion that the action amounted to a collateral attack on the seniority lists approved by the Board.

Our holding that federal jurisdiction exists over plaintiffs' ADEA claims is not intended to imply that the claims have merit or that plaintiffs will have the right to reopen the integrated seniority lists formulated by the parties' mutually selected arbitrator. Although the complaint's allegations of "willful and continuous violation of Section 4(a) of the ADEA" (Compl. ¶¶ 14, 16) at first blush appear to sound in terms of discriminatory intent with respect to each of the plaintiffs, this case is governed by § 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2). That section insulates an employer or labor organization from ADEA liability for observing the terms of a "bona fide seniority system ... which is not a subterfuge to evade the purposes" of the ADEA.

The criterion for determining whether a seniority system is a "bona fide" one is stated in the pertinent regulation issued under the Act, 29 C.F.R. § 1625.9(a) (1984), which provides that "[t]hough a seniority system may be qualified by such factors as merit, capacity, or ability, any bona fide seniority system must be based on length of service as the primary criterion ...". Since the merged list uses length of service at the top and bottom ends of the list and

uses length of service combined with a ratio between the two former lists for the middle of the merged list, it would appear to satisfy the test that length of service be the "primary criterion."

With respect to the requirement that a seniority system not be a "subterfuge," a term that implies discriminatory or evasive intent, as in § 703(h) of the Civil Rights Act, 42 U.S.C. § 2000(e)–2(h), *see American Tobacco v. Patterson*, 456 U.S. 63, 64–65, 102 S.Ct. 1534, 1535–1536, 71 L.Ed.2d 748 (1982), the same regulation states that "a purported seniority system which gives those with longer service lesser rights ... may, depending on the circumstances, be a 'subterfuge to evade the purposes' of the Act." *Id.* at § 1625.8(b). Among the circumstances to be considered in this case are the validity of the reasons advanced by the unions for the use of a ratio method in the middle of the list, as well as the validity of plaintiffs' claim that defendants have engaged in "willful" discrimination.

The mere fact that plaintiffs would have fared better under a different scheme does not show that the merged seniority list is a "subterfuge" to evade the ADEA, especially in view of the distinction that must be drawn between age and seniority, in the absence of any evidence in the present record that the union representatives acted in bad faith or with an age-discriminatory motive in arriving at a compromise, or that Pan Am so acted in accepting and implementing it. That compromise recognized that a straight "time served" method would discriminate unfairly in favor of a large number of furloughed Pan Am pilots against actively employed National pilots bringing jobs with them to the merger, and it therefore adopted a ratio method for the middle portion of the integrated seniority list. As the CAB observed:

"Arbitrator Gill was faced with totally opposed positions for the integration of the seniority lists, and the parties were fully permitted to develop their cases supporting their separate positions in a record involving over 4,700 transcript

pages and hundreds of exhibits. In the end the arbitrator did what most arbitrators do—he picked parts of the different positions and made compromises to arrive at what he believed was an equitable result. There is no way, given the sharply divergent and contested positions of the parties, that the arbitrator could ever reach a result that was fully acceptable to all parties—to say nothing of the individual pilots and flight engineers whose interests were represented in the proceeding. That is an inevitable result of arbitration. The fact that dissatisfaction remains is no basis for requiring another seniority integration." CAB Order 82–4–75, at 13.

Plaintiffs' claim that the defendant unions violated their duty of fair representation in the CAB proceeding stands on an entirely different footing from plaintiffs' ADEA claim. To make out this claim plaintiffs must prove that the "union's conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Subsequent interpretations have established that proof of mere negligence or errors of judgment on the part of the union is insufficient.

"To succeed [in a suit for violation of the duty of fair representation] under § 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], an employee must show 'substantial evidence of fraud, deceitful action or dishonest conduct,' ... 'hostile discrimination,' ... arbitrariness or irrationality, ..., or conduct in bad faith....

"As long as the union acts in good faith, courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular advantage." (Citations omitted). *Capobianco v. Brink's Inc.*, 543 F.Supp. 971, 975 (E.D.N.Y. 1982), *aff'd mem.*, 722 F.2d 727 (2d Cir. 1983).

■ The CAB's statutory authority under 49 U.S.C. § 1486(a), as amplified by § 3 of the LPPs, requires it, in order to rule upon whether seniority lists have been integrated in a "fair and equitable manner," to determine whether the unions involved have fairly represented their members in the negotiations and ensuing arbitration proceedings. Moreover, the CAB did just that in the present case. The Board found, as had Arbitrator Gill, that the interests of all the employee groups had been vigorously represented throughout the proceedings and that neither the Janus Group nor PAPF had shown a violation of the unions' duty of fair representation:

"Neither group, both formed to forward the views of some Pan Am furloughees and pilots, respectively, who were otherwise represented in the intra-union arbitration by Pan Am Engineers and Pan Am pilots, has shown that these union representatives breached their duty of fair representation. The record before us amply demonstrates that all union parties vigorously advocated positions on seniority integration advantageous to their members. Janus Group, in addition, appeared in the arbitration to express, directly to Arbitrator Gill, its position for furloughees. To the extent that some of the parties failed to prevail in the substance of their views, and hence occasioned disappointment for certain furloughees and pilots, that is not grounds for our review of the intrinsic nature of the integration system established by the award. It is well-settled that the Board properly 'decline[s] to review and to enter judgment on the merits of * * * [union representatives'] negotiated resolution of * * * [an internal union] seniority dispute arising out of a merger' if satisfied 'that the resolution was reached in a fair and equitable manner.' Here, the record shows that the labor parties adopted fair and equitable procedures—four-way negotiation, mediation, and final and binding arbitration—to resolve their differences on merged seniority; and that the procedures were faithfully carried out—even to the unanimous selection of an eminent arbitrator

in airline seniority matters." CAB Order 82–4–75, at 11 (footnote omitted).

Since the CAB is empowered to and did resolve the fair representation claim, and since plaintiffs are not entitled to *de novo* adjudication by a district court of that claim, the district court's dismissal of the claim as an impermissible collateral attack on the CAB's final order is affirmed.

Appellees next contend that the district court's dismissal of the action should be affirmed on the ground that appellants' ADEA claim is time-barred for failure to file charges with the EEOC within the required 300 days after "the alleged unlawful employment practice occurred". 29 U.S.C. § 626(d)(2). This requires us to "identify precisely the 'unlawful employment practice' of which [the plaintiff] complains." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). Appellees argue that the unlawful practice here occurred in September 1981 when the Gill arbitration award was filed and published by Pan Am, more than 300 days before plaintiffs' filing of their ADEA charges with EEOC. Plaintiffs, on the other hand, contend that the crucial event for ADEA time-bar purposes did not occur until March 28, 1983, when Pan Am first implemented the alleged discriminatory seniority lists by making assignments in accordance with them, as alleged in Par. 12 of their complaint, and that their claim did not accrue until that time, which was within 300 days prior to the filing of their ADEA charges with the EEOC. Moreover, plaintiffs argue, even assuming their claim first accrued in 1981, the violation was a continuing one, thereby making timely their filing of EEOC charges, and the implementation of the seniority system was not a mere consequence or manifestation of the earlier conduct. *See Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981).

■ We have recently held that "[w]hen employees are hired or refused employ-

ment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it, *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir. 1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982), provided such a continuing violation is clearly asserted both in the EEOC filing and in the complaint."[3] *Miller v. I.T. & T.*, 755 F.2d 20, 25 (2d Cir.1985). In *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979), for instance, the court held that "adoption of a seniority system, if discriminatory as to age, constitutes a continuing violation of the ADEA as long as that system is maintained by the employer." *See also E.E.O.C. v. Home Ins. Co.*, 553 F.Supp. 704 (S.D.N.Y.1982); *but cf. Bronze Shields, Inc. v. N.J. Dept. of Civil Service*, 667 F.2d 1074 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). Applying these principles here, we hold that the alleged discriminatory violations in the present case must be classified as continuous ones, giving rise to claims accruing in favor of each plaintiff on each occasion when the merged seniority list was applied to him, provided he filed such charges with the EEOC, which he would be required to establish on remand, *Miller v. I.T.T., supra*, 755 F.2d at 25.

■ Appellants' final contention, that appellees should be estopped from asserting the ADEA time-bar defense, needs little discussion. In *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir. 1982), the court refused to find estoppel in the absence of a finding that the failure to make a timely filing was in consequence "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Accord Kriegesmann v. Bar-*

---

**3.** At the request of the court, plaintiffs have submitted copies of charges filed with the EEOC in which plaintiffs clearly assert ongoing viola-

tions of the ADEA. The complaint also alleges ongoing violations. *See* ¶¶ 14–18.

*ry-Wehmiller Co.*, 739 F.2d 357, 359 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). *See also Pfister v. Allied Corp.*, 539 F.Supp. 224, 227 (S.D.N.Y.1982) (no estoppel where "no allegation that the defendant acted in bad faith or deceitfully lured the plaintiff into settlement discussions, or that it attempted in any way to cause the plaintiff to miss the appropriate filing date").

Appellants here have not satisfied their burden on this issue. They make no estoppel argument against Pan Am. Against the defendant unions, they fail to allege detrimental reliance on any union representations. Nor could they do so, in view of Pan Am's posting of the seniority lists in March 1981 and the retention by PAPF in May 1981 of the same law firm that currently represents plaintiffs.

The order of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

APPENDIX A

PLAINTIFFS WHO FILED CHARGES WITH
E.E.O.C. OR STATE AGENCY

| NAME | ADDRESS | CITY | ST | ZIP |
|---|---|---|---|---|
| AINSWORTH JR | 9365 Spencer | Las Vegas | NV | 89123 |
| ALEXANDER DB | 18 Birchwood Lane | Ramsey | NJ | 07446 |
| BANDY JM | 7 Merwin Bk. Rd. | Brookfield Ctr. | CT | 06805 |
| BARNES KE | 2244 Nightingale Dr. | Santa Rosa | CA | 95401 |
| BENTON, JE | Rt. 9, Box 275 | Goldsboro | NC | 27530 |
| BERGAD JR | P.O. Box 425 | Torrington | CT | 06790 |
| BILLINGS MX | 641 S. Rivershire Dr. | Conroe | TX | 77304 |
| BLEDSOE RP | P.O. Box 427 | Cockeysville | MD | 21030 |
| BOLING JR | 52 Squires Rd. | Madison | CT | 06443 |
| BOWLES ME | Rte. 6, Box 168A | Charlottesville | VA | 22901 |
| BROWN JM | 204 E. Deer Park Dr. | Gaithersburg | MD | 20877 |
| BURMASTER RA | Rte. 1, Box 349 E | Leesburg | VA | 22075 |
| CAMPBELL JD | 3718 Divisadero St. | San Francisco | CA | 94123 |
| CARDINAL DP | 552 Pinelawn Ave. | Belleair | FL | 33516 |
| CLARKE FR | 19 Viejo Way | Novato | CA | 94947 |
| COOK JC | 76 Davenport Dr. | Stamford | CT | 06902 |
| COOL CE | Box 151 | Henderson Harbor | NY | 13651 |
| CORY DC | RD 2 | Frenchtown | NJ | 08825 |
| DAHONEY TG | 129 Clapp Road | Scituate | MA | 02066 |
| DAVIS MK | 4908 Overview Dr. Apt. 1212 | Arlington | TX | 76017 |
| DELAVAN WP | 67 Highpoint Dr. | Gulf Breeze | FL | 32561 |
| DONNELLY WJ | 15601 SW 83rd Ave. | Miami | FL | 33157 |
| DURANT RJ | 106 Hessian Hill Dr. | Pennington | NJ | 08534 |
| EAGER CE | 103 Lincklaen St. | Cazenovia | NY | 13035 |
| ECKEL R | P.O. Box 30664 JFK Airport | Jamaica | NY | 11430 |
| ENDRESEN DA | Box 45 Botsford Hill Rd. | Roxbury | CT | 06783 |
| FINLEY CB | P.O. Box 7671 | Woodlands | TX | 77387 |
| FRAGA RM | 1540 Mancha Dr. | Boulder City | NV | 89005 |
| FRANK RK | Box 615 | Shelter Island | NY | 11964 |
| FREEMAN CE | 7747 Carrleigh Pkwy. | Springfield | VA | 22152 |
| GAUTHIER RW | 3322 Cowper St. | Palo Alto | CA | 94306 |
| GRAY JE | RFD 1, Box 186 | Bethlehem | CT | 06751 |
| GREEN JG | 498 Scotts Lndg. Rd. | Southampton | NY | 11968 |
| GRISEL GR | 7475 Estrella Cir. | Boca Raton | FL | 33433 |
| HALL RH | P.O. Box KK | Wellfleet | MA | 02667 |

| NAME | ADDRESS | CITY | ST | ZIP |
|---|---|---|---|---|
| HAMMES PL | 24 Governors Lane | Bethel | CT | 06801 |
| HANDLEY FK | 2519 Manhattan Ave. | Manhattan Beach | CA | 90266 |
| HANSEL KA | P.O. Box 4021 | Burlingame | CA | 94011 |
| HARGIS RO | 225 Montalvo Rd. | Redwood City | CA | 94062 |
| HERNDON WK | 42 Crest Dr. | Little Silver | NJ | 07739 |
| HOWE JG | P.O. Box 101 | Greendell | NJ | 07839 |
| HUBBARD DG | 5926 S. 73rd E Ave. | Tulsa | OK | 74145 |
| JARBOE RL | 318 Lake June Dr. | Lake Placid | FL | 33852 |
| KAWAMOTO DK | 6850 Glenview Dr. | San Jose | CA | 95120 |
| KELLEY RC | 483 NW 105th Dr. | Coral Springs | FL | 33065 |
| KIRKMAN JD | 2303 E. 2nd St #3 | Bloomington | IN | 47401 |
| KLAU DA | 15 Pond Side Lane | West Simsbury | CT | 06092 |
| KORCHECK SM | 1480 Coronet Dr. | Reno | NV | 89509 |
| LEE WR | 2106 Oriole CT | Fairfield | CA | 94533 |
| LOCHER AH | 151 Clapboard Ridge | Danbury | CT | 06810 |
| LUDWIN RJ | RR 1 North Rd. | New Milford | CT | 06776 |
| LYNCH EJ | 3002 Yorkshire Rd. | Doylestown | PA | 18901 |
| MALO ME | 11500 Fairway Dr. #507 | Reston | VA | 22090 |
| MANIOUDAKIS EX | RD 3 Box 372 | Somerset | NJ | 08873 |
| MARKHAM DA | 7411 N.W. 8th Court | Plantation | FL | 33317 |
| MATEI MM | 1913 Kenilworth Ct. | Toms River | NJ | 08753 |
| MAYO DQ | Rte. 2 Box 85, Sunset Dr. | Ottsville | PA | 18942 |
| MCAULEY GH | 928 Peninsula Ave #409 | San Mateo | CA | 94401 |
| MCGRORY RC | 501 East Mill Road | Flourtown | PA | 19031 |
| MCVAY PR | Route 1 Box 63 | Roxbury | CT | 06783 |
| MEIXSELL CF | 202 Summer Ave. | Horsham | PA | 19044 |
| MILLER JW | 15 Greta Dr. | Danbury | CT | 06810 |
| MOON EE | 745 Windward Rd. | Jackson | MS | 39206 |
| MURPHY BP | 5900 Sarah Ct. | Austin | TX | 78731 |
| NORDMAN VJ | 5109 Green Acres Ct. | Metairie | LA | 70003 |
| O'BRIEN WJ | 73 Princess Anne Ct | Warrenton | VA | 22186 |
| O'NEILL RF | 474 Pepperwood Ct. | Marco Island | FL | 33937 |
| OBER RI | 3 Thornwood Ct. | Setauket | NY | 11733 |
| OLESEK FW | 9421 SW 147th St. | Miami | FL | 33176 |
| PARRISH BP | 2970 Avalon Ave. | Berkeley | CA | 94705 |
| PAUL RV | 8800 SW 123d Ct., J–203 | Miami | FL | 33186 |
| PERRY RA | 1152 St. John Place | Santa Ana | CA | 92705 |
| PICKEN WR | 48 Big Oak Lane | Stamford | CT | 06903 |
| PLATTE CR | 83 Kellogg Dr. | Wilton | CT | 06897 |
| POST RR | Route 1 Box 357 | Newport | WA. | 99156 |
| RAHISER WS | P.O. Box 306 | Branford | CT | 06405 |
| RENNINGS AA | Box 124 RD #2, Jonestown Rd. | Oxford | NJ | 07863 |
| SALKOVICS AJ | 3144 Goldenspur | Camarillo | CA | 93010 |
| SCHWAB EA | 2615 Majestic Dr. | Wilmington | DE | 19810 |
| SHEPARD HE | 38 Jenkins Rd. | Franklin | NJ | 07416 |
| SLOAN GC | 521 Altivo Ave. | Watsonville | CA | 95076 |
| STANNARD LA | 129 Newton Ave. | Norwalk | CT | 06851 |
| TAUBERT AR | Rte. 3, Foxrun Lane S | Newtown | CT | 06470 |
| UGIANSKIS RX | PO Box 16, Candlewood Isle | New Fairfield | CT | 06812 |
| VAN WYK PD | 68 New Garden Ave. | Lancaster | PA | 17603 |
| WARREN VF | P.O. Box 579 | Carnelian Bay | CA | 95711 |
| WEAVER RH | 1533 Sopera Ave. | Coral Gables | FL | 33134 |
| WENK PJ | 52 Wellsweet Dr. | Madison | CT | 06443 |
| WILDER JB | 251 Hickory Lane | Roxbury | CT | 06783 |

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|----|----|
| WILLEUMIER RC | 618 Hill Street | Barrington | IL | 60010 |
| WIRKKI TK | Box 423 | Salem | NY | 12865 |
| WYSARD JF | RR 2, Box 91, West Lake Rd. | Mayville | NY | 14757 |
| ACKROYD KG | 5331 Castle Hills Dr. | San Diego | CA | 92109 |
| BLAYDON CJ | 245 West Maple Ave. | Langhorne | PA | 19047 |
| DATER MR | RD Box 5 | Salisbury | CT | 06409 |
| DUNPHY WW | 4 Limekiln Rd. | Ridgefield | CT | 06877 |
| ENGLISH RB | 103 Main St. | Centerbrook | CT | 06409 |
| GASKILL JP | 1335 Wood Park Dr. | Kennesaw | GA | 30144 |
| GERT WA | 8815 NE 28th St. | Bellevue | WA | 98004 |
| HAKIM PR | 1881 Cragin Dr. | Bloomfield Hills | MI | 48013 |
| HOLLAND DK | 107 Pt O'Woods Dr. | Toms River | NJ | 08753 |
| KURTZ D | Paradise Valley Rd. RFD #1 Box 310-W | Bethlehem | CT | 06751 |
| MOREY RL | 295 Morningsun Ave. | Mill Valley | CA | 94741 |
| NEUMEISTER JT | 9 Baldwin Dr. | Sussex | NJ | 07461 |
| RHODES EA | 3343 N.E. 116th St. | N. Miami Beach | FL | 33160 |
| STEFFAN KJ | 253 Farview Ave. | Long Valley | NJ | 07853 |
| TURNER EB | 20 Mt. Foraker Ct. | San Rafel | CA | 94903 |
| WAGER R | Skyline Ranch Box 8 | Jackson | WY | 83001 |
| WEAVER LG | Elvirasteig 43 | 1 Berlin 37 | | |

## APPENDIX B
### PLAINTIFFS WHO ARE OPTING INTO THIS ACTION

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|----|----|
| ABRAHAM JW | 12831 Viscaino Rd. | Los Altos Hills | CA | 94022 |
| ADAMS FE | 8 Autumn Ridge Rd. | Weston | CT | 06883 |
| ADAMS RJ | 217 Woodland Dr. | Osprey | FL | 33559 |
| ALFORD TL | 83 Robin Ridge Dr. | Madison | CT | 06443 |
| AMOS JI | 2703 St. James Rd. | Belmont | CA | 94002 |
| ANDING JD | River Rd. | Wash Crossing | PA | 18977 |
| ANTILL WZ | 3459 NE 30th Ave. | Lighthouse Pt | FL | 33064 |
| ARCHER EL | 506 S. Union Ave. | Fergus Falls | MN | 56537 |
| ARCHER SH | 7340 SW 132nd St. | Miami | FL | 33156 |
| ARFSTEN KE | 616 Rinaldo St. | Santa Rosa | CA | 95405 |
| AVINELIS FE | 825 Wootten Dr. | Kerman | CA | 93630 |
| BAKER FA | 17 Betsy Lane | Ambler | PA | 19002 |
| BALDINGER JE | P.O. Box 662 | Pullman | WV | 26421 |
| BARKER HM | 155 N. Harbor Dr. #1712 | Chicago | IL | 60601 |
| BARNETTE JL | 140 NE 53 Ct. | Ocala | FL | 32671 |
| BEENE JT | 4028 Lynbrook Lane | Arlington | TX | 76015 |
| BEHRE RE | 101 Sagamore Dr. | Murray Hill | NJ | 07974 |
| BERDEAUX BJ | P.O. Box 66-1335 | Miami Springs | FL | 33266 |
| BERGER RL | 3100 NE 49th St. #1102 | Ft. Lauderdale | FL | 33308 |
| BETHEA WD | 2716 Creekbed Lane | Charlotte | NC | 28210 |
| BLACK LD | RD 8 Box 236 | Flemington | NJ | 08822 |
| BLUM JE | 137 Elm St. | San Mateo | CA | 94401 |
| BRAISTED SC | 5961 SW 17th St. | Plantation | FL | 33317 |
| BREEN CA | 149 Northbridge Ave. | Warwick | RI | 02886 |
| BRICKEY RE | 2314 South 22nd E. | Salt Lake City | UT | 84109 |
| BROWNING DG | 740 Penfield St. | Longboat Key | FL | 33548 |
| BUTLER DE | Wolzogenstr 17 | 1 Berlin 27 | | |

**650**

| NAME | ADDRESS | CITY | ST | ZIP |
|---|---|---|---|---|
| BUTLER RE | 3840 Wood Ave. | Coconut Grove | FL | 33133 |
| BUTTERILL JB | 4101 NE 16th Ave. | Ft. Lauderdale | FL | 33334 |
| CALVERT JD | 10362 Center Dr. | Villa Park | CA | 92667 |
| CANEDY DJ | 4666 Vernette Dr. | El Cajon | CA | 92020 |
| CANTARANO TF | 3530 W. 187th St. | Torrance | CA | 90504 |
| CARROLL PL | 967 W Rambling Dr. | W. Palm Beach | FL | 33411 |
| CASEY TB | 18 Ellsworth Park | Cambridge | MA | 02139 |
| CASSOTIS JN | 9 Forest St. | Londonderry | NH | 03053 |
| CAVALLARO CF | Box 704 | Sharon | CT | 06069 |
| CHAMBERLAIN KS | 6677 Villa Bonita Rd. | Las Vegas | NV | 89102 |
| CLACK RH | RR Box 380 | Hamburg | NJ | 07419 |
| COHEN SX | Bozener Str 11 | 1000 Berlin 62 | | |
| COLES AE | RD 1 Box 505–B | Stockton | NJ | 08559 |
| COMPTON HG | 1 Cove Rd. | Brookfield | CT | 06804 |
| COOKE WM | 407 Sylvia Way | San Rafael | CA | 94903 |
| COOPER DE | 240 NW Ferry St. | Poulsbo | WA | 98370 |
| COOPER JD | RD #1 Box 93 | Columbus | NJ | 08022 |
| COSHLAND GC | 2282 Dosinia Ct. | Reston | VA | 22091 |
| CRISTMAN VD | 76 Locker St., P.O. Box 151 | Beachwood | NJ | 08722 |
| CROWL DL | 9 Hemlock Dr. | Deep River | CT | 06417 |
| CUNNINGHAM JJ | 615 Millcross Rd. | Lancaster | PA | 17601 |
| CUTCHIN AA | RFD 2 Box 149 | Onancock | VA | 23417 |
| DAVIS CR | P.O. Box 3339 | San Clemente | CA | 92672 |
| DICKINSON DC | 1212 Winter Spring B | Winter Springs | FL | 32708 |
| DIETER CJ | 258 East Wood Rd. | Roxbury | CT | 06783 |
| DORSEY RM | Roxbury Station | Roxbury | CT | 06783 |
| DRENNAN DC | 219 Paseo Del Rio | Moraga | CA | 94556 |
| DREW HE | 16200 Mt. Rose Highway | Reno | NV | 89511 |
| DUNKLEE JC | P.O. Box 4166 | Incline Village | NV | 89450 |
| DWYER DJ | 5 Summit St. | Rensselaer | NY | 12144 |
| EUBBS SK | 20 Mtn. Laurel Lane | Fletcher | NC | 28732 |
| EDGERLY DF | 57 Rita Dr. | New Fairfield | CT | 06810 |
| EGERER RA | 1480 Bradley Rd. | Bow | WA | 98232 |
| ELLISON GL | 20775 Salida Terr. | Boca Raton | FL | 33433 |
| FAGERLAND DD | 6000 93rd Ave. SE | Mercer Island | WA | 98040 |
| FALZARANO VL | 7900 SW 146th St. | Miami | FL | 33158 |
| FARRINGTON ID | 4260 Pines Rd. | Paducah | KY | 42001 |
| FELL DM | P.O. Box 615 | Homer | AK | 99603 |
| FERNANDES DR | R.D. 6, Box 342 | Flemington | NJ | 08822 |
| FIGUEROA FH | 9280 Font'bleau Blvd. | Miami | FL | 33172 |
| FINDLAY DJ | P.O. Box 310 | Gig Harbor | WA | 98335 |
| FLATTER DE | 2630 NE 51st St. | Lighthouse Pt. | FL | 33064 |
| FLEISCHER RH | 349 Vista Linda Dr. | Mill Valley | CA | 94941 |
| FLYNTZ J | 63 Summit Rd. | Sparta | NJ | 07871 |
| FOURNET DJ | 154 Gerald Dr. | Danville | CA | 94526 |
| FOXWORTH TG | 5449 Rutherford Dr. | Woodbridge | VA | 22193 |
| FRIEND PE | 2404 Lakefrt Dr. | Knoxville | TN | 37922 |
| FROST S | 2760 NE 23rd Place | Pompano Beach | FL | 33062 |
| FUSTER AS | 8125 Westbourne Dr. | Pensacola | FL | 32506 |
| GAGE LC | 2255 Sunrise | Reno | NV | 89509 |
| GALLI RP | 11 Gill St. | Exeter | NH | 03833 |
| GEORGE RL | 6605 Tina Lane | McLean | VA | 22101 |
| GICK RP | 2363 Greenswaro S. | Warrington | PA | 18976 |
| GIDDENS DR | 390 Everett Place | Danville | CA | 94526 |
| GIROUARD NG | 1701 NE 64th St. | Ft. Lauderdale | FL | 33334 |
| GOLIBER JT | 25 Pine Hill Bend | Ballston Lake | NY | 12019 |

| NAME | ADDRESS | CITY | ST | ZIP |
|---|---|---|---|---|
| GOOLSBY TE | RD 1 Sunset Lane | Washington Depo | CT | 60794 |
| GORMAN LR | P.O. Box 20862 | Billings | MT | 59104 |
| GREINER RM | 465 Harwood Ave. | Satellite Bch. | FL | 32937 |
| GUETTLER DP | Gustav Freytag 15 | 1 Berlin 33 | | |
| HAMAN DB | PO Box 131, Candlewood Isle | New Fairfield | CT | 06812 |
| HARLAN RR | 5850 Cameron Run Ter. | Alexandria | VA | 22303 |
| HATCH TE | 9 Appletree Way | Long Valley | NJ | 07853 |
| HEATHCOCK AD | 524 Fawns Walk | Annapolis | MD | 21401 |
| HEEMSTRA JW | Winston Dr. | Washington Depo | CT | 06794 |
| HEINRICH RW | P.O. Box 1575 | Allentown | PA | 18105 |
| HEWLETT BN | Bogus Hill #248 | New Fairfield | CT | 06812 |
| HICKS LM | 169 Rutledge Ct. | Conroe | TX | 77302 |
| HOFF TL | 1503 Quaker Ridge | Austin | TX | 78746 |
| HOFFMAN DJ | 1800 S.W. 75th Terr. | Plantation | FL | 33317 |
| HOFFMAN R | 17 Skylark Rd. | Bloomingburg | NY | 12721 |
| HORROCKS AG | 56 Old Bridge Rd. | Brookfield | CT | 06804 |
| HUBER DE | 420 NE 9th Ave. | Ft. Lauderdale | FL | 33301 |
| HUDSPETH CB | 1099 Tilton Rd. | Sebastopol | CA | 95472 |
| HUESMAN MJ | 73 Shore Land Dr. | Key Largo | FL | 33037 |
| HUNSBERGER LM | 7194 Hillcrest Dr. | Macungie | PA | 18062 |
| HURD TL | P.O. Box 1384 | Park City | UT | 84060 |
| HUSKEY BP | Rt. 7 Box 163, South Rugby Rd. | Hendersonville | NC | 28739 |
| ISRAELITE DZ | 116 Central Park So. | New York | NY | 10019 |
| JOHNSTON IR | 2361 Morrison Lane | Suisun | CA | 94585 |
| JONES JH | 741 Marshall St. | Beverly | NJ | 08010 |
| JORGENSEN CW | 47 Mohawk Ave. | Corte Madera | CA | 94925 |
| JUNG DH | Clayallee 44 | 1000 Berlin 33 | | |
| KANE TJ | 1228 S. Inverness Way | Fresno | CA | 93727 |
| KANODE JS | Wingfield Res. Est., 1763 Cocoplum Ct. | Longwood | FL | 32779 |
| KASPAR MA | Box 321 | Lumberton | NJ | 08048 |
| KAST R | 41 White Pine Dr. | Brookfield Ctr. | CT | 06805 |
| KAY RE · | RD 2 Box 162E | New Hope | PA | 18938 |
| KELLY PL | P.O. Box 331S Rd., Rhododendron Rd. | Fitzwilliam | NH | 03447 |
| KELLY WH | 85 Viscount Dr., A–62 | Milford | CT | 06480 |
| KIEHLE GA | 1486 Country Club Dr. | Los Altos | CA | 94022 |
| KILLER RE | 3309 Melendy Dr. | San Carlos | CA | 94070 |
| KILLMON BC | RT 1 Box 756 | Moore Haven | FL | 33471 |
| KLINE WJ | P.O. Box 66 | Elkton | FL | 32033 |
| KNOWLES HW | 1697 N. Goldeneye Ln. | Homestead | FL | 33030 |
| KNUDSON RC | 2200 Panorama Way | Salt Lake City | UT | 84124 |
| LAMAR JW | 7007 Erland Rd. | Santa Rosa | CA | 95405 |
| LAMBERT TD | Laurel Lane | New Castle | NH | 03854 |
| LARSON LT | 5213 NW 58th Court | Gainsville | FL | 32606 |
| LASH JF | 578 Caber Drive | Santa Rosa | CA | 95405 |
| LAUMEYER RH | Box 548 | Teton Village | WY | 83025 |
| LEET AC | 4493 Faraone Court | San Jose | CA | 95136 |
| LEGARE MT | 3761 NW 100th Ave. | Coral Springs | FL | 33065 |
| LESTER GT | 2171 30th Ave. | San Francisco | CA | 94116 |
| LEWIS EW | Box 2102 | Castro Valley | CA | 94546 |
| LIGHT HA | 2870 NW 107 Ave. | Coral Springs | FL | 33065 |
| LIVINGSTON DB | 19 Stoney Brook Rd. | Holmdel | NJ | 07733 |
| LONGLEY JD | 240 Shore Drive P.O. Box 567 | Ozona | FL | 33560 |

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|----|----|
| LOWRY JR | 4 Miller Place Rd. | Miller Place | NY | 11764 |
| MACGLASHAN DH | 78 Nut Plains Rd. | Guilford | CT | 06437 |
| MAGUIRE JM | Harborview Dr., Box 321 | Essex | CT | 06426 |
| MANCHESTER SA | 99 Broadmoor Ct. | Novato | CA | 94947 |
| MANN KA | 981 Bluebird St. | Naples | FL | 33942 |
| MARINO JM | 25 Spring Garden Ave. | Colts Neck | NJ | 07722 |
| MASON T | 350 Orion Court | Merritt Island | FL | 32953 |
| MAYER RL | 220 Ersilia Trail | Alamo | CA | 94507 |
| MCALINDEN GI | 3 Elm S., PO Box 194 | Hopewell | NJ | 08525 |
| MCCONNELL RH | 1330 Concord St. | Los Altos | CA | 94022 |
| MCEWAN JL | Rose Farm Center Rd. | Lyndeboro | NH | 03082 |
| MCKAY EA | 19 Elizabeth's Way | Chatham | MA | 02633 |
| MCLAY D | 920 Lake Forest Rd. | Clearwater | FL | 33575 |
| MCLEAN BE | 1116 SW 4th Court | Gresham | OR | 97030 |
| MICHEL FL | 3215 Norman Dr. | Reno | NV | 89509 |
| MILLER C | 235 Linden Dr. | Boulder | CO | 80302 |
| MILLER KG | 764 Berkshire Drive | Millbrae | CA | 94030 |
| MONACO DR | P.O. Box 1768 | Orinda | CA | 94563 |
| MONTGOMERY DC | 2012 Leisure Dr. NW | Winter Haven | FL | 33881 |
| MOONEY WJ | 10900 SW 112th Ave. | Miami | FL | 33176 |
| MORRIS GS | 2115 Skyline Blvd. | Reno | NV | 89509 |
| MORRISON HA | 18 Plaisted St. | Bangor | ME | 04401 |
| NEEDHAM FS | 1777 Coralway North | Vero Beach | FL | 32963 |
| NELSON LM | 6999 Estes Dr. | Arvada | CO | 80004 |
| NESSA NA | Box 78 | Solebury | PA | 18963 |
| NEWBERRY JI | | Powersville | GA | 31074 |
| NEWMAN GM | 5530 Ambrose Drive | Reno | NV | 89509 |
| NOLAN CC | 4189 Dimhold Court | Winston Salem | NC | 27104 |
| NOTINE DM | 503 Bay 5th St. | West Islip | NY | 11795 |
| ODOM HB | 220 Jagoe St. | Denton | TX | 76201 |
| OLASZ E | P.O. Box 1005 | Sanibel | FL | 33957 |
| OMURA LH | First Street | Connelly | NY | 12417 |
| ORR CW | 13 E. Townhouse Lane | Grand Praire | TX | 75051 |
| OTT DE | P.O. Box 5182 | Incline Village | NV | 89450 |
| OUELLETTE CA | 556 So. Ely Blvd. | Petaluma | CA | 94952 |
| PAPA HW | 3806 Ashley Dr. S. | Mobile | AL | 36608 |
| PARKER RC | 323 Beach Rd. North | Wilmington | NC | 28405 |
| PARKER WS | 245 E. 54 St., #15J | New York | NY | 10022 |
| PATE DC | Kniephof Str. 26A | 1 Berlin 41 | | |
| PENN RA | 4063 N. Canyon Rd. | Camino | CA | 95709 |
| PESZYNSKI PR | 1105 Via Media | Lafayette | CA | 94549 |
| PIAVIS WW | 4460 Lambert Dr. | Kennesaw | GA | 30144 |
| PINGREY RH | 114 Sandalwood Ct. | Santa Rosa | CA | 95401 |
| PLASKON WG | P.O. Box 1143 | Mill Valley | CA | 94942 |
| PLATTS RP | 2024 Quincy Ct. | Salina | KS | 67401 |
| POIRIER EJ | 209 Patricia Ave. | Delran | NJ | 08075 |
| POPE TW | 3522 Central Ave. | Nashville | TN | 37205 |
| POUY FR | 36 Flying Cloud Rd. | Stamford | CT | 06902 |
| PROFT CJ | 4842 Fremont Ave. S. | Minneapolis | MN | 55409 |
| QUIMBY CF | 2829 Ellis St. | Bellingham | WA | 98225 |
| RAGLAND JD | 980 SW 74th Terrace | Plantation | FL | 33317 |
| REDMAN FW | RR #1 Box 432 | Bethel | CT | 06801 |
| REMPE WH | Lake Road | Newtown | CT | 06470 |
| ROBBINS RD | 13 Winterberry Dr. | Amherst | NH | 03031 |
| ROGERS GA | 128 Byram Shore Rd. | Greenwich | CT | 06830 |
| ROSS RM | 2335 Odyssey Way | Toms River | NJ | 08753 |

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|-----|-----|
| RUPP RN | 6 Summit Ct. | Woodbury | CT | 06798 |
| SABELLA RR | 2720 NE 42nd St. | Lighthouse Pt. | FL | 33064 |
| SALISBURY WT | 535 Fielder's Lane | Toms River | NJ | 08753 |
| SAVAGE KD | 640 Ridgewood Rd. | · Key Biscayne | FL | 33149 |
| SCHAKE WE | 4039 White Oak Ct. | Sonoma | CA | 95476 |
| SHAVER JK | 48 Cottontail Rd. | Norwalk | CT | 06854 |
| SHEASLEY GF | 16919 N.E. Clackamas | Portland | OR | 97230 |
| SHELFKO KA | Rt. 3, Box 630 B1 | Spokane | WA | 99203 |
| SHUMAN JH | 7901 SW 154 Terrace | Miami | FL | 33157 |
| SHUSTER JF | RD #1 Achortown Rd. | Beaver Falls | PA | 15010 |
| SLIFKA RL | 4359 Mt Helix, Highlands Dr. | La Mesa | CA | 92041 |
| SMITH CD | 9903 NW 19th St. | Coral Springs | FL | 33065 |
| SMITH WT | 237 Redwood Lane | Cheshire | CT | 06410 |
| SMITHSON RB | 2253 Gilman Dr. W. #501 | Seattle | WA | 98119 |
| SONOMURA A | 5152 Maple | Irvine | CA | 92714 |
| SPANGENBURG RB | 9106 Lyon Park Ct. | Burke | VA | 22015 |
| SPELLANE WD | 1020 Aoloa Pl. #208A | Kailua | HI | 96734 |
| STAUFFER DL | P.O. Box 2627 | Truckee | CA | 95734 |
| STEGMANN EP | 1223 Eddie Dr. | Port Orange | FL | 32019 |
| STEPHENSON JE | Janick Strasse 75 | 1 Berlin 37 | | |
| STOECKER GG | P.O. Box 33–1150 | Coconut Grove | FL | 33133 |
| THIELE GF | 2 Pine Tree Hill Rd. | Newton | CT | 06470 |
| THOMAS JR | RR #2 Box 952A, Hwy. 24 | Chester | NJ | 07930 |
| THOMAS WM | 1018 Great Oaks Dr. | Hopkinsville | KY | 42240 |
| THOMPSON JM | 26505 Dutcher Creek | Cloverdale | CA | 95425 |
| THORUP JS | 1845 N. Santa Rita | Tucson | AZ | 85719 |
| TINGLE TH | P.O. Box 3085 | Incline Valley | NV | 89450 |
| TOOKE HW | 408 Timber Lane | Newton Square | PA | 19073 |
| VAN NOTE TE | 3 Brookview CT | Ho-Ho-Kus | NJ | 07423 |
| VOTRUBA WK | 251 Crandon Blvd., #129 | Key Biscayne | FL | 33149 |
| WACHTEL MR | 24 Hastings Dr. | Northport | NY | 11768 |
| WAGNER DC | 53 Main St. | Ridgefield | CT | 06877 |
| WAGNER RK | Rt. 2 Box 144A–5 | Umatilla | FL | 32784 |
| WAGNER RR | 165 Penn Harb Rd. | Pennington | NJ | 08534 |
| WALCHLI DC | 2524 Laguna Vista Dr. | Novato | CA | 94947 |
| WALTERS AE | P.O. Box 37 | Pleasant Mount | PA | 18453 |
| WARD TB | 528 Parker Ave. SE | Decatur | GA | 30032 |
| WEBB RB | 6420 Boca del Mar Dr. #406 | Boca Raton | FL | 33433 |
| WEBER HL | 82 Eleven Levels Rd. | Ridgefield | CT | 06877 |
| WIK DC | 2610 Patio Simpatico | Lake Havasu Cy | AZ | 86403 |
| WILLETT WA | Rt. 1, Box 263 | Dundee | OR | 97115 |
| WILLIAMSON KA | 9 Swan Lane | Hauppauge | NY | 11788 |
| WILTJER JR | 623 South Pitt St. | Alexandria | VA | 22314 |
| WOOD CL | 1809 Edenwald Lane | Lancaster | PA | 17601 |
| WOOLDRIDGE DW | Rt. 3, Box 81 | Muskogee | OK | 74401 |
| WOOLSEY SD | 14 Creekwood Ct. | Danville | CA | 94526 |
| WREN RP | RFD 1, Box 516C | Heber City | UT | 84032 |
| YELTON RW | 680 Miller Dr. 205W | Miami Springs | FL | 33166 |
| YOUNG GF | P.O. Box 76 | Stanfordville | NY | 12581 |
| ZIPRIS M | 7411 S.W. 9th St. | Plantation | FL | 33317 |
| TAYLOR GG | 10840 Nollwood Dr. | Chardon | OH | 44024 |
| THOMAS HS | Unter Den Eichen 114 | 1000 Berlin 45 | | |
| THOMPSON JP | 22763 A Voss Ave. | Cupertino | CA | 95014 |

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|-----|-----|
| THORNE ED | 10467 Plum Tree Lane | Cupertino | CA | 95014 |
| VOGEL RK | 1740 Donner Dr. | Santa Rosa | CA | 95404 |
| VAN GORGINER SB | 2503 Bethaway | Orlando | FL | 32806 |
| WARE PN | 8201 N.W. 37th St. | Coral Springs | FL | 33065 |
| WENTZ RL | Box 137 | Hope | NJ | 07844 |
| WHITE RS | 15825 S.W. 87th Ave. | Miami | FL | 33157 |
| WILLIAMS DD | Holstwig 20 | 1 Berlin 37 | | |
| | | | | |
| AUSTIN RF | 120 Candlewood Hgts. | New Milford | CT | 06776 |
| BARNES PD | 35 Mistletoe Dr. | Covington | LA | 70433 |
| BEAN WS | Beeren Str. 32–34 | 1000 Berlin 37 | W. Germany | |
| BENTLEY TR | 3809 Wooded Creek Dr. | Farmers Branch | TX | 75234 |
| BOMBACH LA | 547 W. Shore Tr. | Sparta | NJ | 07871 |
| BROWN RC | 16750 S.W. 90 Ave. | Miami | FL | 33157 |
| DOUGHERTY DM | RD 7, Box 7544 | Stroudsburg | PA | 18360 |
| ETHERSON JT | 428 Norwood Court | Fort Myers | FL | 33907 |
| FENTNER CJ | 5322 SW 118 Ave. | Cooper City | FL | 33330 |
| FOSTER MB | 246 2nd Ave. | Santa Cruz | CA | 95062 |
| GILKES DE | 917 Smith Dr. | Metairie | LA | 70005 |
| HANLEY MD | 20400 SW 50th Pl. | Ft. Lauderdale | FL | 33330 |
| HASELBY JW | Tegel Flughaven | 1000 Berlin 51 | W. Germany | |
| HERRERA FM | Ten Rod Rd., RR 1, Box 472 | Exeter | RI | 02822 |
| HYMAS HV | 32492 RD 168 | Visalia | CA | 93291 |
| JENKINS DW | 8753 Wimbledon Dr. | Knoxville | TN | 37923 |
| KERREY TW | 2100 Country Club Rd. | Eustis | FL | 32726 |
| KOSS CD | P.O. Drawer D | Miami Springs | FL | 33266 |
| KYLE AM | Blood St. | Lyme | CT | 06371 |
| LANGE RO | 1099 31st Ave. | San Mateo | CA | 94403 |
| MARSHALL JF | 5 Cove Lane | Eustis | FL | 32726 |
| McCABE JR | 1001 Crescent Dr. | Greencastle | IN | 46135 |
| O'CONNOR JH | 101 Gray Rock Rd. | Trumbull | CT | 06611 |
| O'DELL T | 307 Kent Dr. | Cocoa Beach | FL | 32931 |
| OVERBY WC | 7802 Cherry Place Ct. | Humble | TX | 77346 |
| RICH RA | 1205 W. Dunne Ave. | Morgan Hill | CA | 95037 |
| SAVOIE JC | 6544 Harbour Rd. | N. Lauderdale | FL | 33068 |
| SAXON BF | 1092 Serena Way | San Marcos | CA | 92069 |
| SCHLOTE FE | 20 Roton Ave. | Rowayton | CT | 06853 |
| SCROGGIN GC | 5325 SW 63d Ave. | Miami | FL | 33155 |
| SMITH DP | Rt. 1, Box 975B99 | Pensacola | FL | 32507 |
| STULL FP | 885 N.W. 6th Dr. | Boca Raton | FL | 33432 |
| TAYLOR JR | 5116 S.W. 72d Ave. | Miami | FL | 33155 |
| WATERS DR | 411 S.E. 13th Ave. | Pompano Beach | FL | 33060 |
| | | | | |
| DOSS WW | 14211 SW 104th Ave. | Miami | FL | 33176 |
| CRAHEN RR | 3533 4th Lane, SW | Vero Beach | FL | 32962 |
| GAY HM | RD #1, Box 1329 | Bangor | PA | 18013 |
| O'BRIEN SA | P.O. Box 1104 | Hollister | CA | 95024 |
| STABENAU HM | 20439 Interlachen Ln. | Troutdale | OR | 97060 |
| WOLF WA | Box 3016 | Stateline | NV | 89449 |
| ZIESMER RA | 501 29th Ave. Ct. | Poyallup | WA | 98371 |
| ALMQUIST GN | SR #1, Box 127-M | Hawley | PA | 18428 |
| ANDERSON AR | Wareneck P.O. | Wareneck | VA | 23178 |
| ACKINSON WP | Hohenzollern 1B | 1000 Berlin 39 | | |
| BACON RN | 348 Velma Dr. | Largo | FL | 33540 |
| BAILEY C | RR #5, Echo Valley Rd. | Newtown | CT | 06420 |
| BISH LW | 752 Ridge Dr. | McLean | VA | 22101 |

| NAME | ADDRESS | CITY | ST | ZIP |
|------|---------|------|----|----|
| BROOKS RS | 7440 NW 6th St. | Plantation | FL | 33317 |
| BURGER JJ | 5 Woodsvale Rd. | Madison | CT | 06443 |
| BURROUGHS WJ, Jr. | 9 Maple Ln. | Brookfield | CT | 06804 |
| CRAIG DC | 1955 NW 108 Ln. | Coral Springs | FL | 33065 |
| COBB JP | Berlin Pilot Mail PAA Hangar 17 MR | Jamaica | NY | 11430 |
| CROSS RL | 2225 Colusa Hwy. | Yuba City | CA | 95991 |
| FREDERIC GC | Box 6152 | Incline Vlg. | NE | 89450 |
| FULLER BB | 5072 Country Club Way | Pt. Orchard | WA | 98366 |
| GOELTZ FS | 2168 Candelero | Santa Fe | NM | 87505 |
| HUMBLE RA | 5770 SW 114th Ter. | Miami | FL | 33156 |
| HAWES LJ | 1407 Ball Road | Eagle Pt. | OR | 97527 |
| KANE M | Johannisburgeralle 3 | 1 Berlin 19 | | |
| KELLEY R | 295 Dayton Rd. | S. Glastonbury | CT | 06073 |
| KLEIN RL | Box 322 | Rowayton | CT | 06853 |
| KELLEY EG | 14300 Clayton Rd. | San Jose | CA | 95127 |
| LAMP RJ | 6300 Rogers Circle | Lincoln | NE | 68506 |
| LEINBACH SP, Jr. | 317 Fairmont Ave. | Winchester | VA | 22601 |
| LEWIS JW | Box 43 Star Rt. | Pleasant Mt. | PA | 18453 |
| LITTLEPAGE MJ | 186 Vineyard Rd. | Huntington | NY | 11743 |
| LONG TE | 1530 Alabama Dr. | Winter Park | FL | 32789 |
| MEFFERT MD | Gelding Hill Rd | Sandy Hook | CT | 06482 |
| McKAY DI | Teel Rd. | Fairfield | NY | 13336 |
| MERCIER RD | 8 Gina Dr. | Centerport | NY | 11721 |
| NEUWALD EJ | Box 4074 | Tequesta | FL | 33458 |
| NEWSTROM HM | Box 787 | Somis | CA | 93066 |
| PANZER DA | Beergnstrasse Fa | 1 Berlin 37 | | |
| PARRAGA WA | Box 3753 | Incline Village | NY | 89450 |
| PENWELL GS | 24290 Sailview Dr. | Elmira | OR | 97437 |
| PHILLIPS, CM | Fechnerstr. 16 | 1 Berlin 31 | | |
| REMELY B | 518 N 17th Ave. | Bozeman | MT | 59715 |
| RHODES SS | 1956 Port Cardiff Pl. | Newport Bch. | CA | 92660 |
| SMITH LW | Rt. 1, Box 420 | White Salmon | WA | 98672 |
| SMITH W | Box 962 | San Mateo | CA | 94403 |