104 F.3d 353
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Brenda MAYES, Plaintiff-Appellee-Cross-Appellant,
v.
DRUG, CHEMICAL, COSMETICS, PLASTICS AND AFFILIATED DRUG,
CHEMICAL, COSMETIC, PLASTICS AND AFFILIATED INDUSTRIES
Warehouse Employees Local 815, Affiliated With the
International Brotherhood of Teamsters and Del Laboratories,
Inc., Defendants-Appellants-Cross-Appellees.
 Nos. 96-7001, 96-7031.
 United States Court of Appeals, Second Circuit.
 Nov. 20, 1996.
 
 APPEARING FOR DEFENDANT-APPELLANT: Robert M. Ziskin, Commack, N.Y.
 APPEARING FOR PLAINTIFF-APPELLEE: Eric Dubinsky, Carle Place, N.Y.
 E.D.N.Y.
 REVERSED.
 Before FEINBERG, LEVAL and PARKER, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the order of the District Court be and it hereby is REVERSED.
 
 
 3
 Brenda Mayes brought this action against her employer, Del Laboratories, Inc., and her union, Local 815, alleging that Del fired her without good cause in violation of the collective bargaining agreement and that the union breached its duty of fair representation by not filing a grievance and proceeding to arbitration. After a bench trial, Magistrate Judge Lindsay found for the plaintiff and awarded her back pay, punitive damages, and reinstatement. Mayes then settled with the union. Del appeals.
 
 
 4
 The evidence at trial showed the following:
 
 
 5
 Mayes worked as a production line assembler for Del and was represented by Local 815. The collective bargaining agreement the union negotiated with Del provides that employees shall not be discharged "except for good and sufficient cause."
 
 
 6
 While on a scheduled break at approximately 2:40 p.m. on April 29, 1993, Mayes went to the cafeteria to retrieve a tupperware bowl that she used to transport her lunch to and from work each day. According to Mayes, the bowl contained no food, but only a piece of empty aluminum foil. Mayes testified that for over a year she had taken her bowl from the cafeteria and stored it in an office where she had previously worked for about nine months.
 
 
 7
 While on the way to the office where she kept her bowl, Mayes encountered Phil Rosenzweig, Vice President of Manufacturing. According to Mayes, Rosenzweig, who did not realize that Mayes was on a scheduled break, started screaming at her, "What are you doing?" She responded that she was on break. Mayes testified that Rosenzweig shoved her; that after a brief angry conversation, he pushed her again and yelled at her to get back to work.
 
 
 8
 Mayes testified that she returned to her position and then asked her line leader, Sophia Taveras, and her supervisor, Eileen Bianco, if she could go to the personnel office to report her altercation with Rosenzweig. She claims that she was given permission by both of them.
 
 
 9
 After leaving the line, Mayes ran into Rosenzweig again. Rosenzweig said, "What are you doing out here? I told you to go back to work." Mayes informed Rosenzweig that she intended to file criminal charges against him.
 
 
 10
 On her way home from work that evening, Mayes stopped at the police station and filed harassment charges against Rosenzweig alleging that he pushed her. It is undisputed that someone from the police station called Rosenzweig that evening and informed him of the charges.
 
 
 11
 The next day, Rosenzweig pulled Mayes's file, which contained information about prior disciplinary action brought against Mayes. The file revealed that Del had attempted to fire Mayes in the past. The union, however, had interceded on Mayes's behalf and succeeded in getting the termination reduced to a two-week suspension. Del had also suspended Mayes on two other occasions. Again, the union had interceded on Mayes's behalf.
 
 
 12
 After reviewing Mayes's conduct and her file, Rosenzweig determined that she should be terminated. Rosenzweig prepared a memorandum recommending Mayes's termination on the grounds that she violated four company rules (including bringing food into work areas, being insubordinate, attempting to enter a work area without authorization, and leaving her work station without permission), that she falsely accused Rosenzweig of harassing her, and that throughout the period of her employment she routinely demonstrated a poor attitude and performance.
 
 
 13
 On May 3, Mayes was notified that she was being terminated. Mayes called Larry Plotnick, the union president, who told her to meet him at Del for a meeting with representatives from Del. At this meeting, Plotnick argued on Mayes's behalf and asked Del to reinstate her.
 
 
 14
 When Del refused to reinstate Mayes, Plotnick investigated Mayes's charge that Rosenzweig had pushed her. Mayes told Plotnick that an employee named Dorothea Smith witnessed her altercation with Rosenzweig and could verify her version of events. Plotnick interviewed Smith who told him that she did not see Rosenzweig push Mayes. In addition, Jose Reyes told Plotnick that he had witnessed the conversation in question and that Rosenzweig had not pushed Mayes. Del also provided Plotnick with a statement by another witness, Sateesh Sadev, which stated that Rosenzweig did not touch Mayes.
 
 
 15
 On May 12, Plotnick met with Charles Schneck, Del's personnel director, and asked that Mayes be reinstated. Plotnick testified that Schneck told him that Del would not take Mayes back "because she had been making comments about Phil [Rosenzweig] and saying Phil had allegedly struck her and that the company's position was that they just didn't want [Mayes] to be there. She was just bad business." In addition, Ben Camadeco, the Secretary/Treasurer of the union who is in charge of making the final decision regarding whether to arbitrate a member's grievance, testified that he called Schneck to plead Mayes's case.
 
 
 16
 After its unsuccessful attempts to convince Del to reinstate Mayes, the union decided not to arbitrate Mayes's termination. Plotnick testified that the union did not arbitrate because of Mayes's prior disciplinary record and the fact that other employees "confirmed that a loud discussion had taken place and that [Rosenzweig] never touched her, as she contended." Camadeco testified that he "look[ed] at ... what the member was discharge[d] for," the fact that Del had tried to fire her before, and the "fact that there [weren't] any solid witnesses" in deciding not to go to arbitration.
 
 
 17
 After trial, the magistrate judge found for Mayes. Although the magistrate judge did not make a specific finding as to whether Mayes committed any of the alleged violations of workplace rules, she found that those violations were pretext. She determined that the real reason that Del fired Mayes was because she filed criminal charges against Rosenzweig. From this she concluded that Mayes was not fired for good cause. In addition, she found that the union had breached its duty of fair representation by failing to investigate the underlying charges against Mayes, and that the union had discredited Mayes's story "for no apparent reason." The magistrate judge concluded that any investigation into those charges would have "immediately disclosed" that the charges were pretext. The magistrate judge therefore entered judgment in favor of Mayes. Del appeals.
 
 
 18
 In order to prevail in her claim against her employer, Mayes must show not only that the employer breached the collective bargaining agreement but also that the union breached its duty of fair representation. See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 2290-91 (1983).
 
 
 19
 On appeal Del argues that the magistrate judge erred in finding that the union breached its duty of fair representation. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916 (1967). Although a union that arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion violates the duty of fair representation, see Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568-69, 96 S.Ct. 1048, 1058 (1976), an employee does not have an absolute right to have the union take her grievance to arbitration. Vaca, 386 U.S. at 191, 87 S.Ct. at 917. Moreover, "mere negligence or errors of judgment" do not constitute a breach of the union's duty. Cook v. Pan American World Airways, Inc., 771 F.2d 635, 645 (2d Cir.1985), cert. denied, 474 U.S. 1109, 106 S.Ct. 895 (1986).
 
 
 20
 The magistrate judge's conclusion that the union breached its duty of fair representation was based on her finding that had the union investigated whether Mayes had violated the workplace rules it would have discovered that those alleged violations were not the real reason for firing Mayes. We disagree both with the conclusion that the union breached its duty of fair representation by not investigating and with the finding that the union had no good reason to disbelieve Mayes. We also disagree with the magistrate judge's finding that Del concealed its true reason for firing her.
 
 
 21
 As to the magistrate judge's finding that Del concealed its true reason for terminating Mayes's employment, we fail to see how this could be so. The document prepared by Rosenzweig and given to both Plotnick and Mayes stated that Mayes had falsely accused Rosenzweig of harassing her. Far from being a concealed motivation for terminating Mayes, her allegedly false accusation was expressly stated as part of the reason for her termination. This was further confirmed by the testimony of Del executives at the trial.
 
 
 22
 As to the union's breach of duty, which, as noted, is an essential element of the cause of action against the employer, we find no basis for the magistrate judge's conclusion that the union breached its duty by failing to investigate certain specifications in the discharge report. Mayes was fired in part for making an allegedly false claim that Rosenzweig had physically harassed her. Mayes told Plotnick, her union president, of a witness who would confirm her accusation. However, when Plotnick began to investigate and consulted Mayes's witness, the witness failed to confirm Mayes's story. Plotnick pursued his investigation, interviewing another witness who again contradicted Mayes's accusation. In addition, Del provided the union with a copy of a statement from another employee who witnessed the conversation and said that Rosenzweig did not touch Mayes. Based on this information, the union was justified in concluding that Mayes's charges against Rosenzweig were false and that Del acted within its rights in firing her. Under the circumstances, the union had no further duty to investigate the company's other alleged justifications for her termination or to demand arbitration.
 
 
 23
 Nor was there justification for the finding that the union had no good reason for disbelieving Mayes. Plotnick's discovery, upon investigation, that all the witnesses failed to support Mayes's accusation, including the witness Mayes had asserted would confirm her story, furnished very good reason to disbelieve Mayes.
 
 
 24
 We therefore reverse the judgment entered in favor of Mayes and remand for entry of judgment in favor of Del.